**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FILED

DEC 13 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| ALEXANDER GRAHAM-SULT; DAVID GRAHAM, | No. 15-17204 |
| Plaintiffs-Appellants, | D.C. No. 4:10-cv-04877-CW |
| v. | MEMORANDUM* |
| NICHOLAS P. CLAINOS, an individual; BILL GRAHAM ARCHIVES LLC, DBA Wolfgang's Vault; NORTON LLC, a limited liability company; WILLIAM E. SAGAN, an individual, | |
| Defendants-Appellees. | |

| | |
|---|---|
| ALEXANDER GRAHAM-SULT; DAVID GRAHAM, | Nos. 16-16768<br>16-17083 |
| Plaintiffs-Appellants, | D.C. No. 4:10-cv-04877-CW |
| v. | |
| BILL GRAHAM ARCHIVES LLC, DBA Wolfgang's Vault; NORTON LLC, a limited liability company; WILLIAM E. SAGAN, an individual, | |

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Argued and Submitted November 14, 2017
San Francisco, California

Before: RAWLINSON and BYBEE, Circuit Judges, and SMITH,[**] Chief District Judge.

Plaintiffs Alexander Graham-Sult and David Graham are sons of the late rock-and-roll concert promoter Bill Graham and beneficiaries of his will. Plaintiffs allege that certain intellectual and tangible property belonged to Graham personally, as opposed to his companies, and thus should have passed to them after his death. They assert various claims against Nicholas Clainos, the executor of Graham's estate, and against Bill Graham Archives LLC, Norton LLC, and William E. Sagan (collectively, "the BGA Defendants"). The district court granted

---

[**] The Honorable William E. Smith, Chief United States District Judge for the District of Rhode Island, sitting by designation.

2

summary judgment for all defendants and awarded attorney's fees to the BGA

Defendants under the Copyright Act, 17 U.S.C. § 505. We now affirm.[1]

I

Plaintiffs' first claim against Clainos is for conversion of four categories of property: (1) poster copyrights, (2) the trademark for "The Fillmore," (3) poster sets, and (4) posterbooks. Under California law, "[t]he basic elements of [conversion] are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen. Corp.*, 55 Cal. Rptr. 3d 621, 638 (Cal. Ct. App. 2007).

With respect to the poster copyrights, plaintiffs cannot demonstrate the first element of conversion, a right to possess the property. Because it is undisputed Graham neither created the posters himself nor purchased the intellectual property rights to them, the only way he could have personally owned the poster copyrights is if he was the commissioning party under the works-for-hire doctrine. "[W]hen one person engages another . . . to produce a work of an artistic nature, . . . the

---

[1] We have jurisdiction under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 665 (9th Cir. 2017).

3

presumption arises that the mutual intent of the parties is that the title to the copyright shall be in the person at whose *instance and expense* the work is done." *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 877 (9th Cir. 2005) (emphasis added). Plaintiffs raise no triable issue of fact as to whether the posters were created at Graham's personal instance and expense. The posters promoted the companies' concerts. There is no evidence Graham paid any poster artist from *personal* funds.[2] To the contrary, there is substantial evidence Graham's companies paid some poster artists and considered posters as an expense in determining each show's profit. Because plaintiffs cannot show that they have any right to possess the poster copyrights, their claim for conversion of the copyrights fails as a matter of law.[3]

With respect to the trademark for "The Fillmore," plaintiffs cannot demonstrate either a right to possess the trademark or damages. "The good will of a trademark is an inseparable part of that mark as well as an inseparable part of the

---

[2] Even as to the eight posters that (according to plaintiffs) were published before Graham began operating as a business, plaintiffs have not raised a triable issue of fact as to whether the posters were created at Graham's expense.

[3] The parties dispute the number of poster copyrights at issue in this appeal and, hence, the number of posters registered within five years of publication and entitled to presumptive validity under 17 U.S.C. § 410. The dispute is immaterial because plaintiffs have not raised a triable issue of fact as to whether *any* poster was created at Graham's expense. Any presumption to which plaintiffs may be entitled under § 410 is rebutted.

business which owns the mark." 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:2 (5th ed.). Accordingly, "[t]he law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992); *see also* 15 U.S.C. § 1060 (a mark is "assignable with the goodwill of the business in which the mark is used"). Even if Graham had personally owned the trademark for "The Fillmore" at his death, that trademark would necessarily have been included in the sale of Bill Graham Enterprises, Inc. ("BGE") to the company's key employees. Plaintiffs received compensation for their shares of BGE as part of that sale.[4] They possess no right to the trademark today, nor could they have suffered any damage in this regard.

Similarly, plaintiffs can show neither a right to possess the poster sets nor any damage stemming therefrom. Graham's companies paid for the posters to be printed, considered the posters as an expense in determining each show's profit, paid to store, maintain, and insure the poster archives, and staffed the archives with their employees. The poster sets were undoubtedly included in the sale of BGE to

---

[4] Plaintiffs do not dispute that, "[a]fter Graham's death, the Trademark always remained tethered to and associated with the business."

the company's key employees, and as noted above, plaintiffs were compensated for that sale. The sale agreement granted plaintiffs a right of first refusal with respect to any offer to purchase the archives, which they twice declined to exercise. Later, plaintiffs were given the opportunity to retrieve Graham's personal property from the archives and left the posters where they were. There can be no genuine dispute that Graham's companies owned the posters sets and, as with the trademark for "The Fillmore," plaintiffs cannot have suffered any damage in this regard.

As for the posterbooks, we agree with the district court that there remains a genuine dispute as to whether the posterbooks belonged to Graham personally. We also agree, however, that plaintiffs have produced no evidence of the second element of conversion, namely, a wrongful disposition of the posterbooks. "Not every failure to deliver property to the rightful owner constitutes a conversion." *Spates v. Dameron Hosp. Assn.*, 7 Cal. Rptr. 3d 597, 609 (2003). "To establish a conversion, it is incumbent upon the plaintiff to show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of the property." *Id.* "The act of removing personal property from one place to another, without an assertion of ownership or preventing the owner from exercising all rights of ownership in such personal property, is not enough to constitute conversion." *Id.* Here, there is no indication

6

that Clainos wrongfully disposed of the posterbooks. He did not even know of their existence until the early 2000s, at which point he gave plaintiffs the opportunity to retrieve their father's personal property from the archives. Plaintiffs do not dispute they had access to all areas of the archives. Although they claim they did not actually learn of the posterbooks' existence until much later, they cannot show that Clainos made any wrongful disposition of this property.

Finally, plaintiffs' conversion claim based on the poster sets and posterbooks fails for the independent reason that it is barred by res judicata. "California's Probate Code provides that the final order of the probate court generally discharges the personal representative from all claims by heirs 'based upon any act or omission directly authorized, approved, or confirmed in the judgment or order.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 745–46 (9th Cir. 2014) (quoting Cal. Prob. Code § 7250(a)). "However, the final order does not have this effect if the order is 'obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment as to any material fact.'" *Id.* at 746 (quoting Cal. Prob. Code § 7250(c)). In the prior appeal in this litigation, we held that plaintiffs' allegations that Clainos concealed the disputed tangible property would, if proven, defeat any res judicata defense. *Id.* On remand, plaintiffs failed to raise any triable issue of fact in this regard, and we

now find that res judicata applies to plaintiffs' conversion claim based on the poster sets and posterbooks.

## II

Plaintiffs' second claim against Clainos is for breach of fiduciary duty. Under California law, "[t]he elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Mosier v. S. Cal. Physicians Ins. Exch.*, 74 Cal. Rptr. 2d 550, 565 (Cal. Ct. App. 1998). Here, plaintiffs cannot prove Clainos breached any fiduciary duty. Even if it were true that Graham owned the disputed property, there is still no genuine dispute as to whether Clainos knew or should have known as much. Nor is there any genuine dispute regarding whether Clainos was reasonable in relying on Richard Greene's legal determination that BGE owned the copyrights, trademark, and concert memorabilia. The district court correctly granted summary judgment on the breach of fiduciary duty claim.

## III

Plaintiffs' claims against the BGA Defendants fail for the same reasons discussed above in connection with the conversion claim against Clainos. In addition, plaintiffs' claims against the BGA Defendants fail for the independent

reason that the BGA Defendants were innocent purchasers of the disputed property. "California . . . recognize[s] an innocent purchaser defense." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1145 (9th Cir. 2010). "As a general rule, an innocent purchaser for value and without actual or constructive notice that his or her vendor has secured the goods by a fraudulent purchase is not liable for conversion." *Id.*

In the prior appeal in this litigation, we declined to affirm dismissal of plaintiffs' claims against the BGA Defendants because plaintiffs had alleged Sagan knew of prior fraudulent transfers of the disputed property, and taken as true, that allegation would defeat an innocent purchaser defense. *Graham-Sult*, 756 F.3d at 749 n.21. Plaintiffs have not raised sufficient evidence to support their allegation that Sagan, or any other BGA Defendant, knew of any defect in title. Nor can plaintiffs show that title in the disputed property was void. We therefore agree with the district court that the BGA Defendants were innocent purchasers and were entitled to summary judgment on plaintiffs' conversion, copyright infringement, and declaratory relief claims on this basis.

IV

Plaintiffs appeal the district court's award of attorney's fees and costs to the BGA Defendants. Under the Copyright Act of 1976, a court has discretion to

9

award reasonable attorney's fees and costs to the prevailing party. 17 U.S.C. § 505. The court considers the following factors: degree of success obtained, objective unreasonableness of the claims, frivolousness, motivation, the purposes of the Copyright Act, and whether the chilling effect of awarding attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017). These factors are not exclusive and need not all be met. *Id.*

We review an award of fees and costs for abuse of discretion. *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 556 (9th Cir. 1996). Given the complete success obtained by the BGA Defendants, the objective unreasonableness of plaintiffs' claims against them, and the purposes of the Copyright Act, the district court did not abuse its discretion in determining an award of fees and costs was appropriate here. Nor the did the district court abuse its discretion in calculating the award. We therefore affirm the district court in this regard.

Lastly, the BGA Defendants request attorney's fees and costs for this appeal pursuant to § 505. For the same reasons given above, we award reasonable attorney's fees and costs on appeal to the BGA Defendants.

* * *

10

For the foregoing reasons, the orders of the district court are **AFFIRMED.** The BGA Defendants shall recover reasonable attorney's fees and costs incurred on appeal, and the case is referred to the appellate commissioner for determination of an amount.



***Graham-Sult v. Clainos*, Case Nos. 15-17204, 16-16768, and 16-17083**
**Rawlinson, Circuit Judge, concurring:**

I concur in the result.