FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLACIER FILMS (USA), INC.;
GLACIER FILMS 1, LLC,
    *Plaintiffs-Appellants*,

v.

ANDREY TURCHIN, FKA Doe-
73.164.151.227,
    *Defendant-Appellee.*

No. 16-35688

D.C. No.
3:15-cv-01817-
SB

OPINION

Appeal from the United States District Court
for the District of Oregon
Stacie F. Beckerman, Magistrate Judge, Presiding

Argued and Submitted May 15, 2018
Portland, Oregon

Filed July 24, 2018

Before: M. Margaret McKeown and Richard A. Paez,
Circuit Judges, and Cynthia A. Bashant,* District Judge.

Opinion by Judge McKeown

---

\* The Honorable Cynthia A. Bashant, United States District Judge
for the Southern District of California, sitting by designation.

# SUMMARY**

## Copyright Act / Attorney's Fees

The panel reversed the district court's order denying plaintiff's motion for attorney's fees in a copyright infringement suit.

A film production company sued a user of BitTorrent, a peer-to-peer network, who illegally downloaded and repeatedly distributed a movie. Per the parties' agreement in a stipulated consent judgment, the defendant stipulated to liability and to statutory damages, and the district court entered a permanent injunction against him.

The panel held that the district court abused its discretion by focusing on its generally unfavorable view of other BitTorrent litigation and failing to faithfully apply the "*Fogerty* factors" in deciding whether to award attorney's fees under 17 U.S.C. § 505. The panel remanded the case to the district court.

## COUNSEL

John Mansfield (argued), Harris Bricken, Portland, Oregon; Carl D. Crowell, Crowell Law, Salem, Oregon; for Plaintiffs-Appellants.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Klaus H. Hamm (argued), Klarquist Sparkman LLP, Portland, Oregon; David H. Madden, Mersenne Law, Tigard, Oregon; for Defendant-Appellee.

## OPINION

McKEOWN, Circuit Judge:

This appeal stems from one of the many copyright infringement lawsuits filed against individuals who unlawfully download and distribute movies online. As digital pirates increasingly use BitTorrent and other peer-to-peer networks to share media, copyright holders have pressed the courts for recourse. These suits are not without controversy: many involve "copyright trolls" who buy up copyrights to adult films and then sue masses of unknown BitTorrent users for illegally downloading pornography.[1] This one is different: a film production company sued a single user who illegally downloaded and distributed repeatedly *American Heist,* a Hollywood action movie.

An important remedy under the Copyright Act provides that courts "may" award attorney's fees to a prevailing party in an infringement action. In *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994), the Supreme Court laid out factors to guide discretion in whether to award fees. Because the district court did not faithfully apply the "*Fogerty* factors" in *this* meritorious BitTorrent action, we reverse and remand

---

[1] *See, e.g., AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014); *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 82 (E.D.N.Y. 2012).

for consideration of an award of reasonable attorney's fees.**[2]**
The court's denial of fees under the present circumstances—
based on a one-size-fits-all disapproval of *other* BitTorrent
suits—requires a remand.

## BACKGROUND

For context, we discuss the proliferation of peer-to-peer
Internet piracy suits before clicking through to the specifics
of this case.

### PEER-TO-PEER INTERNET PIRACY SUITS

Peer-to-peer networking involves a "decentralized
infrastructure whereby each participant in the network . . .
acts as both a supplier and consumer of information
resources." *Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020, 1024 (9th Cir. 2013). In other words, "peers"
download content from fellow peers, while leaving their own
folders of digital content available for others to download.
One type of peer-to-peer networking involves the BitTorrent
protocol, in which a file is broken up into smaller pieces
from various peers and then reassembled upon completion
of a download. *See AF Holdings,* 752 F.3d at 998. With
BitTorrent, "each user is both downloading and uploading
several different pieces of a file from and to multiple other
users." *Fung*, 710 F.3d at 1027. Peer-to-peer networks like
BitTorrent are "ideally suited for sharing large files, a feature
that has led to their adoption by, among others, those
wanting access to pirated media, including music, movies,

---

**[2]** The parties consented to a magistrate judge for all district court
proceedings, including the entry of final orders. Hence, we review
directly the magistrate judge's order denying fees. We refer to the
magistrate judge as "the district court" or "the court" throughout the
opinion.

and television shows." *Id.* at 1025; *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919–20 (2005).

Digital piracy of copyrighted materials on peer-to-peer networks can have severe financial consequences for copyright holders. As one member of Congress put it:

> Under U.S. law, stealing intellectual property is just that—stealing. It hurts artists, the music industry, the movie industry, and others involved in creative work. And it is unfortunate that the software being used—called "file sharing," as if it were simply enabling friends to share recipes, is helping create a generation of Americans who don't see the harm.

*Privacy and Piracy: the Paradox of Illegal File Sharing on Peer-To-Peer Networks and the Impact of Technology on the Entertainment Industry: Hearing Before the S. Comm. on Governmental Affairs*, 108th Cong. 10–14 (2003) (statement of Sen. Levin); *see also id.* at 1–2 (statement of Sen. Boxer) (asserting that "downloading copyrighted works is theft" and "is a real problem").

To combat losses from peer-to-peer file sharing, copyright holders have filed a spate of lawsuits against infringers in federal courts across the country. *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 298–99 (4th Cir. 2018); *Killer Joe Nevada, LLC v. Does 1–20*, 807 F.3d 908, 910 (8th Cir. 2015); *Dallas Buyers Club, LLC v. Madsen*, No. C14-1153RAJ, 2015 WL 6680260, at *1 (W.D. Wash. Nov. 2, 2015) (noting that the action is "one of 13 practically identical cases filed" alleging

BitTorrent users' infringement of the movie *Dallas Buyers Club*).

Facing a "large number of similar peer-to-peer copyright infringement cases," in March 2016 the United States District Court for the District of Oregon sought a practical solution and established special procedural rules in a "Case Management Order." *See* U.S. District Court for the District of Oregon, Standing Order 2016-8, *available at* https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/standing-orders/active-standing-orders#civil-matters (last accessed July 11, 2018). Among other things, the Order allows copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity, directs that holders must alert potential defendants of the availability of pro bono counsel to defend against infringement claims, and limits holders to suing one alleged BitTorrent infringer at a time.

## GLACIER'S LAWSUIT IN OREGON[3]

Glacier Films (USA), Inc. and Glacier Films 1, LLC (collectively, "Glacier") hold valid and enforceable copyrights in the film *American Heist*.[4] Scheduled for widespread theatrical release in January 2015, *Heist* instead leaked prematurely on BitTorrent, where it became a top downloaded (i.e., pirated) movie. According to Glacier, over 100,000 Internet Protocol ("IP") addresses illegally

---

[3] The parties stipulated to the relevant facts.

[4] Glacier Films (USA), Inc. was a producer of *American Heist*; Glacier Films 1, LLC is a movie-production company that holds the copyright to the film's screenplay.

downloaded and exchanged the copyrighted film on BitTorrent.

Tracking one such infringing IP address to Oregon, Glacier brought suit in district court against the John Doe owner and subpoenaed records from Comcast to ascertain the Doe's identity. Glacier selected that particular IP address because the user distributed the film 80 times and was associated with over 700 other titles. When records revealed Andrey Turchin as the owner of the IP address, Glacier sent two letters seeking his participation in determining who downloaded the movie. After Turchin proved non-responsive, Glacier obtained leave to depose him. At his deposition, Turchin admitted to downloading copyrighted content with that IP address, right up until the day before his deposition.

Glacier amended its complaint to name the avid BitTorrent user as the single defendant and sent Turchin a letter advising him of the district court's pro bono program so that he could obtain assistance in filing a responsive pleading. After nearly three months of attempting to contact Turchin, Glacier filed a motion for default. The court appointed pro bono counsel, who filed an answer raising various affirmative defenses, denying liability, and seeking costs and attorney's fees. On that same day, Turchin provided Glacier with a Rule 68 Offer of Judgment in which Turchin offered to pay $2,501 to Glacier in exchange for Glacier's agreement that the sum would satisfy all debts and obligations related to the suit, including any claim for damages, costs and attorney's fees. A few days later, Turchin filed an amended answer removing five of the seven affirmative defenses, but continuing to deny liability and maintaining his own request for costs and fees.

After conferring, the parties reached a stipulated consent judgment. Per the agreement, Turchin stipulated to the "allegations that give rise to liability for the infringement of [Glacier's] rights" and to $750 in statutory damages. The court permanently enjoined Turchin from using the Internet to reproduce, copy or publish *American Heist*, and ordered him to immediately delete any unlicensed copies of the movie in his possession. The parties agreed that "any award of reasonable attorneys fees shall be determined by the [c]ourt in accordance with 17 U.S.C. § 505 and pursuant to [Federal Rule of Civil Procedure] 54." Glacier moved for costs of $791.70 and attorney's fees totaling $4,833.35. The court awarded costs to Glacier but denied any attorney's fees.

## ANALYSIS

The Copyright Act, coupled with extensive precedent from both the Supreme Court and our court, lay the foundation for our analysis. The statute states simply that the district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Although the court enjoys "wide latitude to award attorney's fees based on the totality of circumstances in a case," its discretion must remain tethered to judicial guideposts. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016).

The Supreme Court in *Fogerty* provided a nonexclusive list of factors for courts to consider in making a fee determination: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." 510 U.S. at 534 n.19; *see also Kirtsaeng*, 136 S. Ct. at 1985. We have added factors that "may be

considered" and "need not all be met": the degree of success obtained in the litigation, the purposes of the Copyright Act, and "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant]." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017). We recently re-affirmed our commitment to these factors, but emphasized that district courts should "accord substantial weight to" the "reasonableness of [the] losing party's legal and factual arguments." *Shame On You Prods., Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018); *see also Kirtsaeng*, 136 S. Ct. at 1989 (giving the factor "significant weight").

## I. THE DISTRICT COURT ABUSED ITS DISCRETION IN APPLYING THE FACTORS

Although the court properly cited all of the Supreme Court and Ninth Circuit factors, it focused on three— "minimal success" in the litigation, the lack of need for further deterrence, and the goals of the Copyright Act. The court's analysis was infused with criticism of *other* BitTorrent cases as well as a critique of Glacier's counsel in *other* file sharing litigation. While we understand that prolific BitTorrent litigation has taxed the courts and that the District of Oregon has adopted a sensible way to manage its dockets, individual cases nonetheless deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright litigation. The sheer volume of suits should not preordain a court's fee determination in any one suit. Nor should an individual client, such as Glacier, be penalized for the tactics of its counsel in other cases.

For these and the more specific reasons explained below, we conclude that the court misapplied the factors on which it focused while omitting analysis of other factors that may

counsel toward an award of fees—including the unreasonableness of the losing party's (Turchin's) conduct.

## A.  THE DEGREE OF SUCCESS IN THE LITIGATION

The district court noted that Glacier's suit was "not frivolous," but went on to conclude that its success was "minimal."  In fact, Glacier's infringement suit against Turchin was a "total success."  *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996).  Glacier alleged that Turchin copied and distributed *American Heist* through a public BitTorrent network without Glacier's permission; Turchin's actions infringed on Glacier's exclusive rights under the Copyright Act; and Turchin's conduct was "willful, intentional, in disregard of and indifferent to [Glacier's] rights with the intent to deprive [Glacier] of income and cause [Glacier] harm."  Turchin stipulated to those facts giving rise to liability and to $750 in statutory damages for violating the Copyright Act.[5]  Despite Glacier's complete victory, the district court did not weigh the degree of success in the litigation in Glacier's favor; instead, the court twisted total triumph into a conclusion that "the degree of success in each of these BitTorrent copyright cases is minimal."

The court's reasons for reaching this unexpected outcome lack support in the law and the record.  To begin, the court observed that "the $750 statutory damage award Defendant has agreed to pay is low in relation to the amount of attorney fees Plaintiffs have accrued ($4,833.45), to

---

[5] The parties contest whether the stipulation encompasses the allegation that Turchin infringed Glacier's copyright willfully.  Because the underlying facts surrounding Turchin and *American Heist* are undisputed, the answer to that legal question does not affect the outcome.

achieve that result." This is a flawed premise that mixes and matches actual success with the determination of a reasonable fee award. Actual success in an infringement action involves establishing the defendant's liability. *See Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006) (affirming an award of fees under the appropriate factors and noting that a "plaintiff will ordinarily be regarded as the prevailing party if he succeeds . . . in establishing the defendant's liability, even if the damages awarded are nominal or nothing"). An award of a "reasonable" attorney's fee requires a separate determination of an amount, which may consider the hours worked among other factors. *See The Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 832–33 (9th Cir. 2003) ("In applying [17 U.S.C. § 505], district courts are charged with two tasks: first, deciding whether an award of attorneys' fees is appropriate, and second, calculating the amount of fees to be awarded.").

The court did not cite any precedential authority that a small (and agreed upon) amount of statutory damages is a reflection of "minimal success." To the contrary, we have expressed concern that a "small award for damages," without fees, may be "insufficient to deter future copyright infringements such as the one at issue here." *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996); *see also Wall Data Inc.*, 447 F.3d at 787.

The Seventh Circuit has gone so far as to announce a "presumptive entitlement" to fees for a "prevailing party in a copyright case in which the monetary stakes are small." *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 610 (2002) (citing *Magnuson*, 85 F.3d at 1432). We do not adopt such a presumption because doing so would collide with Supreme Court guidance and is not consistent with the statute. *See*

*Kirtsaeng*, 136 S. Ct. at 1988–89 (underscoring that "§ 505 confers broad discretion on district courts" and rejecting an approach that effects a presumption of fees under certain circumstances). Nevertheless, the policy rationale underlying the presumption—that "willful infringements involving small amounts of money" may not be "adequately deterred" absent an award of fees—is a principle that bears on the calculus of whether to award fees. *Gonzales*, 301 F.3d at 609–10.

As a factual matter, we consider it curious that the district court focused on the $750 statutory damages amount. In doing so, the district court elided that Turchin offered to pay Glacier $2,501 in exchange for Glacier's agreeing that the sum would satisfy all debts and obligations related to Glacier's lawsuit, including any claim for damages, costs and attorney's fees. That Glacier's counsel rejected the $2,501 offer in favor of $750 in stipulated damages and the opportunity for costs and fees hardly reveals "minimal success" in the litigation; rather, it underscores a belief that Glacier had a strong legal case for costs and fees.

Next, the court reasoned that because *American Heist* had been illegally downloaded over 100,000 times and this suit yielded an injunction against only one infringer, "that result is *de minimis* in relation to the serious online piracy problem Plaintiffs seek to combat." This conclusion makes little sense in light of the district court's Case Management Order, which allows copyright holders to sue only one BitTorrent infringer at a time. Under that Order, an injunction against one infringer is the *best possible result* Glacier could have achieved in this suit. An assertion that "lots of other people are doing it, too" is not a persuasive equitable principle and does not counsel toward a denial of fees. Instead, we see dissonance between the district court's

citation to the large number of infringers and its conclusion that fees are unnecessary as a deterrent.

## B. DETERRENCE

Overall, the district court did not appropriately weigh the interests of deterrence and compensation. *See Magnuson*, 85 F.3d at 1432 ("Because it is not apparent from the district court's decision that it considered the factors listed in *Fogerty*, particularly the goal of deterring future copyright infringements, we remand for reconsideration of this issue."). The court asserted without support that a "financial penalty" of $1,500 (consisting of the costs and the agreed statutory damages) "is sufficient to deter [Turchin], as well as others, from illegally downloading movies in the future." The record belies this contention.

In fact, Turchin continued to use BitTorrent to pirate copyrighted content even after he received notice that he might be at risk of legal penalties—right up until the day before his deposition. *See Kirtsaeng*, 136 S. Ct. at 1989 (noting that a court may order fee-shifting to deter repeated instances of infringement). Turchin was "associated with" 700 pirated titles, an amount that may be worth more in economic value than $1,500. An avid BitTorrent user like Turchin may rationally decide that the risk of being caught and sued for $1,500 is worth the price of admission for access to unlimited media.

Further, the district court identified various BitTorrent cases with stipulated consent judgments of over $8,000 that settled before Turchin continued to download copyrighted titles. *See, e.g.*, *Cobbler Nevada, LLC v. Reardon*, No. 3:15-cv-01077-ST, 2015 WL 9239773, at *2 (D. Or. Dec. 16, 2015). If those larger judgments did not deter Turchin and his peers from using BitTorrent, why would a "penalty" a

fraction of that size deter willful infringements in the future? The district court's assertion does not add up.

We recognize that new technologies have strained application of certain sections of the Copyright Act, but the attorney's fee provision is not one of them. In fact, in recognition of the ubiquity of file sharing and the need to enhance deterrence, in 1999, Congress increased available statutory damages: raising minimum damages from $500 to $750, maximum damages for non-willful infringements from $20,000 to $30,000, and maximum damages for willful infringements from $100,000 to $150,000. Pub. L. No. 106-160, 113 Stat. 1774 (codified at 17 U.S.C. § 504). One need look no further than the statutory title to see what Congress had in mind: The Digital Theft *Deterrence* and Copyright Damages Improvement Act. As one member of Congress stated at the time: "Copyright piracy . . . is flourishing in the world. With the advanced technologies available and the fact that many computer users are either ignorant of the copyright laws or simply believe that they will not be caught or punished, the piracy trend will continue" absent increased penalties. 145 Cong. Rec. H12884-01 (daily ed. Nov. 18, 1999) (statement of Rep. Coble). By passing the Deterrence Act, "Congress specifically acknowledged that consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement" and "contemplate[d] that suits like this were within the Act." *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 500 (1st Cir. 2011).

In raising the stakes for unlawful digital file-sharing, however, Congress left the attorney's-fees provision intact. Given that congressional choice, it is not logical to resolve that statutory damages alone sufficiently deter this species of copyright infringement—while making fees categorically

unavailable. If now, almost two decades after the Deterrence Act, copyright trolls and mass filings present a further public policy issue, then Congress should step in. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 430–31 (1984) ("[A]s new developments have occurred in this country, it has been the Congress that has fashioned the new rules that new technology made necessary."). Meanwhile, we must judge each case on its own merits.

## C. THE GOALS OF THE COPYRIGHT ACT

Finally, the district court erred in its assessment of whether awarding fees in this case would "further the purposes of the [Copyright] Act." *Mattel, Inc v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013). Some of our earlier opinions have called this the "most important factor" in granting or denying a request for fees. *See SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013); *Mattel*, 705 F.3d at 1111; *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 558 (9th Cir. 1996). After *Kirtsaeng*'s 2016 endorsement of a "totality of circumstances" approach and its statement that the losing party's reasonableness carries "significant weight," it is unclear whether the purposes-of-the-Copyright-Act factor remains the "most important" one. 136 S. Ct. at 1989. In any event, it is sufficient to note that because the guiding principles of the Copyright Act run throughout the other factors, it remains important.

The goal of the Copyright Act is "to promote creativity for the public good." *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994); *see also Fogerty*, 510 U.S. at 524 ("The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public."). Inherent in the Act's purpose is that "a copyright holder has always had the

legal authority to bring a traditional infringement suit against one who wrongfully copies." *Grokster*, 545 U.S. at 963. In the Internet Age, such suits "have served as a teaching tool, making clear that much file sharing, if done without permission, is unlawful[,] and apparently have had a real and significant deterrent effect." *Id.*

This case fits squarely within the tradition of copyright enforcement. Turchin's conduct—pirating and distributing dozens of copies of Glacier's film—does not "promote the Progress of Science and useful Arts" by "assur[ing] authors the right to their original expression" and "encourag[ing] others to build freely upon the ideas and information conveyed by a work." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349–50 (1991). This is not a case of the infringer creating something new and incorporating a copyrighted element into that new, creative work. *See Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018) (affirming the denial of fees in an infringement award involving the 2013 Robin Thicke and Pharrell Williams song "Blurred Lines" and the 1977 Marvin Gaye song "Got to Give It Up"). Rather, this case is the digital equivalent of standing outside the neighborhood Redbox—or Blockbuster Video, for fans of history—and giving away copies of the movie for free. Nevertheless, the district court did not analyze whether Turchin's conduct furthers or frustrates the goals of the Copyright Act.

Nor did the district court find that Glacier acted contrary to those goals in this particular case. Instead, its decision rested on a view that awarding "attorney fees in this case would only contribute to the continued overaggressive assertion and negotiation of" *other* copyright claims. Apparently, the court saw the fact that Glacier's counsel had filed 300 copyright actions against BitTorrent infringers as

an "overaggressive assertion[] of copyright claims," which counseled toward a denial of fees.[6]

The district court initially erred by positing that "[i]n *Kirtsaeng*, the Supreme Court noted that a court may also consider the need to 'deter . . . overaggressive assertions of copyright claims'" in *denying* fees. *See* 136 S. Ct. at 1989. That paraphrasing of the *Kirtsaeng* decision is inaccurate.

*Kirtsaeng* actually stated that a district court "*may order fee-shifting* . . . to deter . . . overaggressive assertions of copyright claims, again even if the *losing position* was reasonable in a particular case." 136 S. Ct. at 1988–89 (emphases added). For example, the Supreme Court cited a Sixth Circuit case "awarding fees *against* a copyright holder who filed hundreds of suits on an overbroad legal theory, including in a subset of cases in which it was objectively reasonable" to do so. *Id.* at 1989 (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 593–94 (6th Cir. 2008)). But crucially, *Bridgeport Music* was a case in which the copyright holder *lost*, even though it asserted some objectively reasonable claims. *See* 520 F.3d at 593. The court nonetheless awarded fees to the prevailing alleged infringers in an effort to deter the copyright holder from over-aggressively filing *losing* claims. *Id.* Contrary to the district court's statement, nowhere in *Kirtsaeng* did the Supreme Court promote denying fees in *meritorious claims* because those winning claims are somehow "overaggressive." Indeed, it is difficult to see how pursuing a meritorious infringement claim "less aggressively"

---

[6] That Glacier's counsel filed many actions may be a product of the district court's Case Management Order, which provides that copyright holders may name only one potential infringer per BitTorrent suit.

furthers "the Copyright Act's essential goals." *Kirtsaeng*, 136 S. Ct. at 1989.

The court also based its decision on generalizations about *other* BitTorrent cases, not on the "totality of circumstances in [*this*] case." *Id.* at 1985. It is revealing that the court observed that another district court had denied fees in a "similar BitTorrent copyright case," despite the fact that the other case is quite dissimilar. In *Countryman Nevada, LLC v. DOE*, copyright holders "conducted th[e] litigation in a manner calculated to increase the opposing party's costs." 193 F. Supp. 3d 1174, 1182 (D. Or. 2016). Unlike Turchin, the alleged infringer downloaded the movie by accident, "promptly conduct[ed] an investigation," admitted liability, and offered to settle without asserting spurious defenses. *Id.* at 1176–77, 1183. The copyright holders refused to settle unless the infringer paid $8,500, even after the infringer claimed financial hardship. *Id.* at 1177.

The district court nonetheless lumped the present case together with the worst of "these BitTorrent copyright cases," even though it shares none of the unsavory characteristics. Here, Glacier did not "demand thousands of dollars to settle a claim . . . where the infringing defendant admits early in the case that they illegally downloaded the movie." The company did not seek a confidential or uncounseled settlement not subject to court approval, or "pursue particularly vulnerable individuals." Nor is Glacier a quintessential "copyright troll"—a term defined by the district court as an entity "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or

service."[7]  Glacier produced *American Heist*, a Hollywood feature film with a substantial budget and a recognizable cast, including Hayden Christensen, Adrien Brody, and Jordana Brewster.  The company prepared the film for widespread North American theatrical release.  When that fell through—in part, Glacier contends, because of illegal downloads before the release date—Glacier released the movie on DVD and Blu-Ray and licensed the movie for legal, commercial download on services such as Amazon. Glacier's production and marketing of artistic content shares little resemblance to entities hiding in the shadows, buying the copyrights to pornographic films (without creating anything), and seeking settlements from crowds of John Does embarrassed that they were "caught" downloading tawdry titles.  *See AF Holdings*, 752 F.3d at 992–93 (describing the "modus operandi" of a copyright troll).

## D.  OBJECTIVE    UNREASONABLENESS    AND    FRIVOLOUSNESS

District courts do not necessarily need to analyze all of the factors set out in the cases, as those factors are discretionary and non-exclusive.  But in misapplying the three factors on which it focused, the court passed over a factor that "carries significant" or "substantial weight." *Kirtsaeng*, 136 S. Ct. at 1989; *Shame On You*, 893 F.3d at 666.  Notably, the district court never once mentioned the unreasonableness of the losing party's (Turchin's) factual and legal position.  Instead, the court referred only to the prevailing party's (Glacier's) position, confirming that "a copyright holder's action against an individual BitTorrent

---

[7] *C.f. Berkla v. Corel Corp.*, 302 F.3d 909, 924 (9th Cir. 2002) ("Corel's attempt to paint Berkla as a litigious schemer who 'set up' Corel obscures Corel's underlying wrongful conduct . . . .").

copyright infringer is not frivolous under the Copyright Act."

We emphasize the reasonableness factor because "[w]hen a litigant . . . is clearly correct, the likelihood that he will recover fees from the opposing (*i.e.*, unreasonable) party gives him an incentive to litigate the case all the way to the end. The holder of a copyright that has obviously been infringed has good reason to bring and maintain a suit even if the damages at stake are small." *Kirtsaeng*, 136 S. Ct. at 1986. The Supreme Court's guidance squarely addresses the present case.

The failure to analyze Turchin's conduct in the litigation is particularly problematic because his actions added to Glacier's attorney's fees. Although an "infringer with no reasonable defense has every reason to give in quickly, before each side's litigation costs mount," *id.* at 1987, Turchin delayed resolution of this case for nearly eight months from when he was first notified of Glacier's claims. Because Turchin did not respond to letter inquiries, Glacier needed to seek leave to subpoena Turchin for a deposition. There, Turchin admitted to regularly using BitTorrent to download content. Notwithstanding those admissions, Turchin did not file a responsive pleading for almost three months, causing Glacier to file a notice of default in May 2016. Only then did Turchin file an answer.

Despite having previously admitted to regularly using BitTorrent to download media without permission and conceding that he downloaded *American Heist*, Turchin denied liability, sought costs and fees from Glacier, and asserted seven baseless affirmative defenses. For example, Turchin argued that "[a]ny downloading or uploading of the copyrighted work was permitted by the doctrine of fair use" and that the film was not eligible for copyright protection

under the doctrine of *scenes a faire*. But, in fact, this was not "a close and difficult case." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013). The district court, however, never considered the unreasonableness of Turchin's positions.**[8]**

### E.  OTHER FACTORS

We also note that the district court did not assess motivation, a potentially relevant factor here. Given Turchin's constant BitTorrent use (even after receiving notice of this suit) and his multiple admissions to unlawfully downloading content on the network (including *American Heist*), it may be that Turchin's affirmative defenses were not made in good faith. *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1231 (9th Cir. 2008). And because Turchin repeatedly distributed copies despite the express warnings in *American Heist* that unlicensed duplication is illegal and will result in penalties, it may be that his copyright infringement was willful. *See Historical Research v. Cabral*, 80 F.3d 377, 379 (9th Cir. 1996) (noting that "willful infringement is an important factor favoring an award of fees").

---

**[8]** We acknowledge that Turchin's counsel filed an Amended Answer revising the defenses soon after the initial Answer and it may be that researching the defenses only minimally increased Glacier's attorney's fees. That is a factor to weigh in calculating the reasonableness of the claimed fee. We do not criticize pro bono counsel, but rather assess holistically Turchin's legal positions in this litigation.

## II. ON REMAND, THE DISTRICT COURT MUST ASSESS THE SPECIFICS OF THIS CASE

In sum, based on a generally unfavorable view of other BitTorrent litigation, the district court abused its discretion by denying fees without assessing the particulars of this case. The court's analysis of whether fees are warranted should be based on Glacier's case against Turchin—and not on the court's view of BitTorrent litigation in general or on the conduct of Glacier's counsel in other suits.[9] To be sure, the unfortunate facts of other BitTorrent cases may well warrant a denial of fees in certain cases. But an approach that furthers the goals of the Copyright Act considers the facts of a given case, weighs the appropriate factors, and makes a fee determination based on the conduct of both parties.

As the Supreme Court recently counseled, the district court "must view all the circumstances of a case *on their own terms*, in light of the Copyright Act's essential goals." *Kirtsaeng*, 136 S. Ct. at 1989 (emphasis added). We thus reverse and remand for application of the factors and reconsideration of whether to award reasonable attorney's fees. *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) (vacating a fees decision and remanding for "reconsideration").

**REVERSED AND REMANDED.**

---

[9] If, indeed, the court objects to counsel's conduct in other cases, appropriate procedures exist to address that behavior.