NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUL 17 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation, | No.   18-55615 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-05051-GW-AFM |
| v. | |
| STEADFAST NETWORKS, LLC, a Delaware limited liability company, | MEMORANDUM* |
| Defendant-Appellee. | |

| | |
|---|---|
| ALS SCAN, INC., a Maryland corporation, | No.   18-56173 |
| Plaintiff-Appellee, | D.C. No. 2:16-cv-05051-GW-AFM |
| v. | |
| STEADFAST NETWORKS, LLC, a Delaware limited liability company, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted January 24, 2020
Pasadena, California

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  CLIFTON and LEE, Circuit Judges, and BLOCK,[**] District Judge.

Dissent by Judge CLIFTON

The key issue on appeal is whether a data-center service provider has taken adequate "simple measures" to avoid contributory copyright infringement if it forwarded notices of such infringement to the hosting website — and every alleged infringed material was taken down.  We affirm the district court's grant of summary judgment in favor of Steadfast Networks, LLC, the data-center service provider, because it has taken sufficient "simple measures" by forwarding the infringement notices. We, however, reverse the district court's denial of attorneys' fees to Steadfast and remand.

We have jurisdiction under 28 U.S.C. § 1291.  We review de novo a grant of summary judgment, *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017), and we review a denial of an award for attorneys' fees for abuse of discretion, *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037–38 (9th Cir. 2018).

1.      Background:  At the center of these appeals is Imagebam.com, a website that hosts user-uploaded content.  That website has allegedly become an unauthorized hub of copyrighted adult material, some of which was created by ALS

---

[**]      The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

2

Scan, Inc, the plaintiff in this case. ALS sued Steadfast, a data-center service provider that leases servers to its many customers, including Imagebam's owner, so that they can host data on the Internet. ALS sent multiple notices of copyright infringement to Steadfast about the images on Imagebam. Whenever it received such a notice, Steadfast forwarded it to the designated agent for Imagebam. Every copyrighted image at issue was then removed by Imagebam.

2. Contributory copyright infringement: This court has held that a party may avoid liability for contributory copyright infringement if it takes "simple measures" to "prevent further damage to copyrighted works." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017). In this case, Steadfast took those "simple measures" by forwarding ALS's notices of infringement to the owners of Imagebam. There is no dispute that the owner of Imagebam took down all the infringed materials.

ALS disputes whether Steadfast in fact took any actions in response to its notices, but it fails to point to any evidence creating a genuine dispute of fact. ALS asserts that Steadfast's corporate representative testified during his deposition that Steadfast did nothing in response to the notices. In reality, Steadfast's representative was asked whether Steadfast had followed up with the owner of Imagebam after forwarding the notices. Whether Steadfast followed up or not is irrelevant because it is undisputed that Steadfast forwarded the notices and the infringed images were

3

taken down.

ALS complains that it is not enough to forward the infringement notices to Imagebam's owner in light of the number of infringement notices that Steadfast has received. But the number of notices is legally irrelevant. To be liable for contributory copyright infringement, the knowledge required is "more than a generalized knowledge by the Carriers of the possibility of infringement" because "contributory liability [does] not automatically follow where the 'system allows for the exchange of copyrighted material.'" *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)). This court has emphasized that "'actual knowledge of *specific* acts of infringement' is required." *Id*. (emphasis added) (quoting *Napster*, 239 F.3d at 1021). The number of notices that Steadfast previously received gives at most a general knowledge that infringement will likely occur again in the future; this does not give notice of any specific acts of infringement that are actually occurring.

We are sympathetic to ALS's "whack-a-mole problem," but we are persuaded by the specific facts of this case that Steadfast's "simple measures" are enough. Steadfast forwarded each notice to Imagebam's owner, and every infringing work was taken down. Nor is there evidence that Steadfast had any other simple measures at its disposal. Steadfast did not operate, control, or manage any functions of Imagebam.com. It could not supervise, access, locate, or delete Imagebam

4

accounts. It had no way of knowing, based on a URL hyperlink contained in the notices of copyright infringement, where the infringing works or the Imagebam accounts responsible for illegal uploads were located on Flixya's servers. What measures were available to prevent further damage to ALS's copyrighted images, Steadfast took. *See Perfect 10, Inc.*, 847 F.3d at 671 ("Reviewing this issue de novo, we hold that there were no simple measures available that Giganews failed to take to remove Perfect 10's works from its servers."). Further, ALS apparently has not pursued other options that may ameliorate the "whack-a-mole" problem (*e.g.*, taking action against Imagebam's owner or the individuals uploading the unauthorized images).

3. <u>Contributory trademark infringement</u>: Steadfast is also not liable for contributory trademark infringement. Steadfast can only be liable for contributory trademark infringement if it had "direct control and monitoring of the instrumentality used by [the] third party to infringe" the marks at issue. *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 942 (9th Cir. 2011) (internal quotation marks and alterations omitted). Here, there is no dispute that Steadfast did not operate or manage Imagebam or have access to individual users' accounts or content. Steadfast thus could not have been "monitoring" the instrumentality used for trademark infringement.

3. <u>Attorneys' fees</u>: This court explained in *Historical Research v. Cabral* that

5

"'exceptional circumstances' are not a prerequisite to an award of attorneys fees" under the Copyright Act. 80 F.3d 377, 378–79 (9th Cir. 1996) (per curiam). The district court accurately discussed the various factors for awarding attorneys' fees under the Copyright Act, but it also discussed whether there were "exceptional" circumstances (which is required under the Lanham Act but not the Copyright Act). In light of this ambiguity in the record, we reverse and remand on the issue of attorneys' fees.

This court therefore **AFFIRMS** the district court's entry of summary judgment in favor of Steadfast, but **REVERSES AND REMANDS** the district court's denial of attorneys' fees.



Nos. 18-55615 and 18-56173, *ALS Scan, Inc. v. Steadfast Networks, LLC*

CLIFTON, Circuit Judge, dissenting:

I respectfully dissent.  I would reverse the district court's grant of summary judgment on the contributory copyright infringement claim.

The majority disposition correctly identifies, at 2, the key issue as being whether Steadfast Networks, LLC, took "adequate 'simple measures' to avoid contributory copyright infringement."  It concludes that it did.  But the copyright infringement did not stop, so how could the measures taken be deemed "adequate"?

The district court held that "a jury could reasonably conclude that Steadfast was aware of the whack-a-mole problem that [ALS] faced." It was necessarily apparent to Steadfast that copyright infringements would almost certainly continue, given the history alleged.  Hundreds of repeat infringements were reported to Steadfast. Steadfast did not contend (let alone present any evidence to support a conclusion) that the "simple measures" it took did, in fact, "prevent future damage to copyrighted works," the standard purportedly applied by the majority, at 3 (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017)).

The majority appears to accept that copyright law is powerless to address the whack-a-mole problem, but it should not be.  The majority's unstated premise seems to be that Steadfast bears no responsibility for infringements that it is aware

are likely to occur in the future. I do not view the law to be so feeble.

In *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996), we addressed copyright infringement in the context of a swap meet or flea market. We held that the operator of a swap meet could be held liable to the owner of copyrights and trademarks to music recordings for contributory copyright infringement for the sale of counterfeit recordings by vendors at the swap meet. The operator was aware that vendors were selling counterfeit recordings. What mattered was not the operator's knowledge of an individual sale of a specific counterfeit, but its awareness of the infringing practice. It had been informed by the local sheriff of the practice and of the seizures on more than one occasion of thousands of infringing recordings. Similarly, Steadfast could be found in this case to have had knowledge of the infringing practice and of the near certainty of future violations. The district court concluded as much.

The reason the majority appears willing to give Steadfast a free pass from liability for contributory copyright infringement is its conclusion that Steadfast has qualified for the protections provided in our cases for enterprises that provide Internet services. Steadfast is a host for Internet sites. Specifically, we have held that "a computer system operator can be held contributorily liable if it 'has actual knowledge that specific infringing material is available using its system,' and can

'take simple measures to prevent further damage' to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (citations omitted), *quoted in Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017).

The majority appears to interpret that standard to require that an operator can be held liable only if it "continues to provide access" to the *very same* infringing works, but that is not what we said. To the contrary, the language used in our cases has been broader: "continues to provide access to *infringing works*." That fits Steadfast. It continued to provide access to infringing works. They might have been *other* infringing works, but they were no less infringing, and as noted above, Steadfast could be found to have been aware that the future infringement would happen.

This reading of our case law also comports with the scheme of federal legislation. Even copyright statutes intended to immunize Internet service providers expressly contemplate liability for failure to prevent repeat infringements. The Digital Millennium Copyright Act (DMCA) shields from liability only those service providers who have "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system

3

or network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). *See also Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir.), *cert. denied*, 139 S. Ct. 419, 202 L. Ed. 2d 316 (2018) ("Even if a website deletes infringing material as soon as it learns about it, the [DMCA] safe harbor is unavailable unless the site has a policy of excluding repeat infringers."); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012) ("To qualify for protection under any of the safe harbors [of the DMCA], a party must meet a set of threshold criteria . . . including the adoption and reasonable implementation of a 'repeat infringer' policy that 'provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network.'"). The DMCA safe harbor is unavailing when, like the district judge held here, a triable issue of fact exists about whether a defendant has reasonably implemented a repeat infringer policy.

The majority expresses sympathy for the "whack-a-mole" problem faced by ALS Scan, Inc., but that sympathy does not solve the problem. Where, as here, there are allegations that the volume and magnitude of previous infringements caused a defendant to know that such infringements would continue tomorrow, and the next day, and the day after that, I would send this claim to the jury.

I respectfully dissent.

4